UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:

GRL LLC,

      Debtor.

------------------------------------------------------------x

Hearing Date: TBD

Case No: 1:12-10801-alg

Chapter 11

**APPLICATION IN SUPPORT OF
ARCHER CAPITAL FUND L.P.'S
MOTION TO DISMISS GRL LLC'S
CHAPTER 11 CASE FOR CAUSE
AND WITH PREJUDICE**

      Archer Capital Fund L.P. ("**Archer**"), a secured creditor of GRL LLC (the "**Debtor**"), and

interested party in the Debtor's voluntary and repetitive *pro se* Chapter 11 case, by and through its

attorneys, Kriss & Feuerstein LLP, respectfully moves this Court for an Order pursuant to 11

U.S.C. §§ 707(A) and 1112(b), 28 U.S.C. §§ 1391, 1408, 1409 and 1654, and Rule 9014 of the

Federal Rules of Bankruptcy Procedure dismissing this case for cause, with prejudice, and

granting *in rem* relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4), such that any

and all future filings under the Bankruptcy Code by the Debtor, non-debtor EMMANUEL

LAMBRAKIS, non-debtor GREGORY LAMBAKIS, non-debtor GEORGE LAMBRAKIS, non-

debtor ALEXANDER LAMBRAKIS, or any other person or entity with an interest in the real

property of the Debtor shall not operate as a stay as to Archer's enforcement of its rights in and to

the real property of the Debtor, and for such other and further relief as the Court deems just and

proper.  In support thereof, Archer respectfully represents as follows:

## PRELIMINARY STATEMENT

    1.    The filing of the instant case is the Debtor's second bad faith, voluntary, *pro se,*

filing since September 16, 2011.  The First Case (defined below), was properly venued before

the Bankruptcy Court in the Eastern District of New York, and was rightfully dismissed on January 27, 2012 by Order of the Honorable Carla E. Craig pursuant to 11 U.S.C. § 1112(b). A copy of the January 27, 2012 Order of the Honorable Carla E. Craig dismissing the Debtor's First Case is annexed hereto as **Exhibit "P"**. The motion seeking dismissal of the First Case was brought on by motion of the United States Trustee ("**UST**"), at which time, Archer filed an application in support of the UST's Motion to Dismiss and was present at the hearing on said Motion to Dismiss.[1] A copy of the UST's motion seeking dismissal of the Debtor's First Case is annexed hereto as **Exhibit "O"**. Pursuant to the information contained in the First Petition (defined below and filed in the First Case), the GRL Amended Petition (also defined below and filed in the First Case) and the Second Petition (defined below but filed in this case, lacking all schedules), neither the Debtor's address, nor the location of its sole asset have changed.[2] Nevertheless, the Debtor purposefully filed the instant petition before the Bankruptcy Court in the Southern District of New York, presumably to select a different forum, and more specifically to have its case assigned to a judge other than the Honorable Carla E. Craig.

2.      The Debtor's Chapter 11 case was clearly commenced in bad faith and solely for the purpose of preventing Archer, the Debtor's sole pre-petition secured creditor, from exercising its right to foreclose on a mortgage secured by real property of the Debtor's estate pursuant to a state court order directing a foreclosure sale, presently scheduled to occur on March 16, 2012.

3.      The Debtor has no intention (or ability) to reorganize, but rather simply seeks to prevent Archer from exercising rights which derive from agreements related to prepetition loans

---

1 Archer similarly filed an application seeking to dismiss the Debtor's case, which was calendared to be heard on a date subsequent to the motion of the UST. Archer's motion was rendered moot by the Honorable Carla E. Craig's signing the Order sought by the UST.

2 The Debtor's address in the First Case was, and remains herein as 171-65 Hillside Avenue, Jamaica, New York 11432. The Debtor's sole asset is real property located at 3276/3278 31st Street, Astoria, New York (Block 587, Lot 68).

made to, and fully utilized by the Debtor, and also from a Judgment of Foreclosure (as defined below).

4.    On September 16, 2011, the Debtor, filed a voluntary *pro se* petition for Chapter 11 relief in the Eastern District of New York (the "**First Petition**") under case number 1:11:47911-cec (the "**First Case**").  A copy of the First Petition is annexed hereto as **Exhibit "L".**  In the First Case, the Debtor similarly filed a voluntary *pro se* petition, and on September 24, 2011, Archer filed a motion to dismiss (the "**First Motion to Dismiss**") for failure of the Debtor, a limited liability company, to be represented by counsel before the United States Bankruptcy Courts.  See 28 U.S.C. § 1654.  A copy of the First Motion to Dismiss is annexed hereto as **Exhibit "M".**  Honorable Carla E. Craig was assigned to the First Case, which was thereafter dismissed by Order dated January 27, 2012, pursuant to 11 U.S.C. § 1112(b).

5.    On November 2, 2011, the return date of the First Motion to Dismiss, acknowledging that its case would have otherwise been dismissed, the Debtor appeared with counsel, Karamvir Dahiya, Esq.,[3] ("**Dahiya**").  In anticipation of Dahiya being formally retained by the Debtor, Archer voluntarily withdrew the First Motion to Dismiss.

6.    Although the Debtor in this case failed to file any schedules, or any other documents other than a List of Creditors Holding 20 Largest Unsecured Claims, a document purporting to be a corporate resolution permitting someone other than a principal of the Debtor to file the petition, and a creditor matrix, it is clear from the amended schedules in the First Petition, that the Debtor has, by its own admission, failed to generate any income in 2009, 2010, 2011.  In addition, the Debtor apparently has no employees, and only three unsecured creditors holding claims in relatively small amounts compared to Archer's claim ($115,000, $27,500, and

---

3 Although Dahiya appeared on behalf of the Debtor in the First Case, and submitted opposition papers and a revised petition and schedules, on behalf of the Debtor, he failed to file any formal application to be retained by the Debtor.

3

the third claim being an unknown amount).  The first two claims are believed to be claims of

insiders, while the third claim in an unknown amount is identified as a claim owed to DEP.

Thus, as its core, this Chapter 11 case will still only be a two-party dispute between the Debtor

and Archer – a dispute that was recently resolved in favor of Archer by the issuance of the

Foreclosure Order (as defined below) and also by Judge Craig's Order dismissing the Debtor's

prior filing and First Petition.

   7.  The improper motive of the Debtor in commencing this case, is confirmed by the

fact that although the (corporate) Debtor was made aware that it was required to obtain counsel

prior to the filing for relief before the bankruptcy court by virtue of Archer's First Motion to

Dismiss, the Debtor nevertheless filed the instant petition (the "**Second Petition**") *pro se,*

approximately <u>one month</u> after the First Case was dismissed.

   8.  Furthermore, the Debtor surely cannot expect Archer, or this Court, to treat its

decision to re-file a second voluntary *pro se* petition seeking Chapter 11 relief before the Courts

of the Southern District of New York (instead of the Eastern District of New York) as anything

other than an attempt to select a more favorable forum, venue or judge.  Rather, the forum

selected by the Debtor signals that the Debtor understood that refilling in the Eastern District of

New York would mean it would again be before the Honorable Carla E. Craig who dismissed the

Debtor's case one month prior.

   9.  Accordingly, and for the reasons set forth more fully below, Archer respectfully

requests that this Court enter an Order dismissing this Chapter 11 case for cause, with prejudice,

and granting *in rem* relief from the automatic stay, such that any and all future filings under the

Bankruptcy Code by the Debtor, non-debtor EMMANUEL LAMBRAKIS, non-debtor

GREGORY LAMBAKIS, non-debtor GEORGE LAMBRAKIS, non-debtor ALEXANDER

LAMBRAKIS, or any other person or entity with an interest in the real property of the Debtor shall not operate as a stay as to Archer's enforcement of its rights in and to the real property of the Debtor, and to permit Archer to conduct a foreclosure sale.

## JURISDICTION

10.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

11.    Venue is improper in this Southern District of New York pursuant to 28 U.S.C. §§ 1408 and 1409, as the Debtor's address, was and continues herein to be 171-65 Hillside Avenue, Jamaica, New York 11432.  In addition, the address of the Debtor's sole asset is 3276/3278 31st Street, Astoria, New York (Block 587, Lot 68).  Accordingly, since the Debtor's sole asset and address are located in Queens County, New York, proper venue would be placed in the Eastern District of New York.

12.    The statutory predicates for the relief requested herein are 11 U.S.C. §§ 362(d)(4), 707(A) and 1112(b) of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), 28 U.S.C. §§ 1391, 1408, 1409 and 1654, and Rules and Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Rules").

13.    Since the Debtor's Second Petition is devoid of virtually all pertinent and necessary information, an analysis of the Debtor's First Petition and subsequent revisions may serve to guide the Court with a background for the underlying issues in this case.

## BACKGROUND

### The Nature Of Archer's Secured Claim

1.    According to the GRL Amended Petition (defined below), Archer is the Debtor's sole pre-petition secured creditor.  Pursuant the March 22, 2011 Oath and Report of Amount Due

("**Oath**") of Referee Leslie S. Nizin, Esq. ("**Nizin**"), Archer holds a claim in the amount of $2,406,528.93. A copy of the Oath is annexed hereto as **Exhibit "L"**. As indicated by the Archer Affidavit, as of January 18, 2012, interest has accumulated in the amount of $339,902.64, for an aggregate claim of $2,746,431.57. Archer's claim is secured against the real property of the Debtor's estate, based on a note and mortgage described in detail below. Moreover, Archer holds a judgment in its favor entitling it to foreclose on a mortgage secured by assets of the Debtor's estate.

**The Debtor And Related Parties**

2.     On February 28, 2012, the Debtor filed the Second Petition for Chapter 11 relief, which was devoid of any and all schedules, any Statement of Financial Affairs, a list of Equity Security Holders, an affidavit pursuant to LBR 1007-2, a Corporate Ownership Statement, and a Summary of Schedules among other things. In light of the foregoing, an analysis of the GRL Amended Petition (defined below) may serve to clarify some of the issues before the Court.

3.     On September 16, 2011, the Debtor filed a voluntary petition for Chapter 11 relief in the United States Bankruptcy Court for the Eastern District of New York, thereby commencing the First Case. On November 8, 2011, the Debtor filed an amended petition and complete set of schedules (the "**GRL Amended Petition**"). A copy of the GRL Amended Petition is annexed hereto as **Exhibit "I"**. Although no corporate resolution was ever filed, the GRL Amended Petition appears to identify George Lambrakis to be the sole and managing member of the Debtor, with 100% ownership. Interestingly, the First Petition differs from the GEL Amended Petition and the Second Petition in that the First Petition identifies the Debtor to be Single Asset Real Estate and the other two petitions identify the nature of the Debtor's business as "Other". No other factual differences have been set forth to substantiate the Debtor

to be anything other than Single Asset Real Estate.

4.      The First Petition, the GRL Amended Petition, and the Second Petition indicate that the Debtor is a New York limited liability company operating through its offices in New York City, with a principal place of business at 175-61 Hillside Avenue, Jamaica, New York 11432.   The GRL Amended Petition further indicates that the Debtor owns real property in Queens, New York, commonly known as 3276/3278 31st Street, Astoria, New York (Block 587, Lot 68) (the "**GRL Property**").   The GRL Property consists of single story building currently used a medical office by Emmanuel Lambrakis.

5.      As explained more fully below, the loan made to the Debtor by Archer was collateralized against the GRL Property, and was further collateralized against the real properties of two other related entities, GEL LLC ("**GEL**"),[4] and Eagle Realty LLC ("**Eagle**").[5]   At the time the Loan was made, GRL, GEL and Eagle were believed to be owned and operated by a combination of members of the Lambrakis family, including George Lambrakis and/or his two brothers Gregory Lambrakis and Alexander Lambrakis.

6.      GEL is a New York limited liability company operating through its offices in New York City, with a principal place of business at 175-61 Hillside Avenue, Jamaica, New

---

4 On September 16, 2011, GEL filed a voluntary petition for Chapter 11 relief in the United States Bankruptcy Court for the Eastern District of New York under Case No. 1:11-47910-cec (the "**First GEL Case**").   On November 8, 2011, GEL filed a petition and schedules amending the September 16, 2011 petition, the "**GEL Amended Petition**".   Although no corporate resolution was ever filed in that case, the GEL Amended Petition identifies Gregory Lambrakis to be the managing member of the single member LLC that is GEL.   That case was similarly dismissed by Order of the Honorable Carla E. Craig on January 30, 2012.   A copy of the Order dismissing the First GEL Case is annexed hereto as **Exhibit "N"**.

5 On September 16, 2011, Eagle filed a voluntary petition for Chapter 11 relief in the United States Bankruptcy Court for the Eastern District of New York under Case No. 1:11-47909-cec.   On November 8, 2011, Eagle filed a petition and schedules amending the September 16, 2011 petition, the "**Eagle Amended Petition**".   Although no corporate resolution was ever filed in that case, the Eagle Amended Petition identifies George Lambrakis to be managing member of the single member of Eagle possessing a one-third interest in Eagle, and that Gregory Lambrakis and Alexander Lambrakis each hold the other one-third interest in Eagle.   The Eagle case was dismissed pursuant to the Order of the Honorable Carla E. Craig on December 23, 2011, which Order prohibits Eagle from filing any future petitions under any provision of the Bankruptcy Code.   A copy of the Order dismissing the Eagle Case is annexed hereto as **Exhibit "Q"**.

York 11432.  GEL owns real property in Queens, New York, commonly known as 29-08 Hoyt Avenue South, Astoria, New York, and 29-10 Hoyt Avenue South, Astoria, New York (Block 838, Lots 3 and 4 respectively)(the "**GEL Property**").  Upon information and belief, Gregory Lambrakis is the sole and managing member of GEL.

7.      Upon information and belief, Eagle is a New York limited liability company operating through its offices in New York City, with a principal place of business at 175-61 Hillside Avenue, Jamaica, New York 11432.  Upon information and belief, Eagle owns real property in Queens, New York, commonly known as 178-02/178-18 Hillside Avenue, Jamaica, New York, 178-20/178-36 Hillside Avenue, Jamaica, New York and 88-10/88-16 179th Street, Jamaica, New York (Block 9913, Lots 25, 35, and 41 respectively[6])(the "**Eagle Property**", together with the GEL Property and the GRL Property collectively referred to herein as the "**Properties**").  Pursuant to the Amended Schedules filed by Eagle on November 8, 2011, George Lambrakis alleges to be the managing member[7] of Eagle pursuant to his interest in Eagle, while Gregory Lambrakis and Alexander Lambrakis each similarly hold interests in Eagle.

8.      As discussed more fully below, both GEL and Eagle duly executed and delivered to Archer, mortgages further encumbering the Properties in exchange for a loan given by Archer to the Debtor.

## The GEL/GRL Loan, Note and Mortgage

9.      On or about March 8, 2007, Archer made a second loan (the "**GEL/GRL Loan**") to the Debtor, and GEL, in the principal sum of $2,600,000.00.  The purpose of the GEL/GRL

---

6 On or about August 15, 2011, one or more parcels which make up the Eagle property may have been erroneously transferred to Transylvania Realty, LLC by Referee's Deed via foreclosure sale upon a mechanics lien.  Correcting the transfer of the parcels that make up the Eagle Property is the subject of an ongoing litigation.

7 By Memorandum, Decision and Order dated September 13, 2010, ACF Hillside, L.L.C. ("ACF Hillside"), acceded George Lambrakis as Managing Member of Eagle Realty, L.L.C., in the case captioned <u>ACF Hillside, L.L.C. v. George Lambrakis</u> Index No. 27393-08.

Loan was designed to refinance the existing defaulted debt, and to fund additional costs related to the Properties. The GEL/GRL Loan was evidenced by a Consolidated Secured Promissory Note dated March 8, 2007 (the "**GEL/GRL Note**"), which was executed and delivered by the Debtor and GEL to Archer in the principal sum of $2,600,000.00. A copy of the GEL/GRL Note is annexed hereto as **Exhibit "A"**.

10. As security for the Debtor and GEL's obligations under the GEL/GRL Note, including, without limitation, the repayment of the GEL/GRL Loan, a Mortgage Consolidation and Extension Agreement, Assignment of Leases and Rents and Security Agreement (the "**GEL/GRL Mortgage**") dated March 8, 2007 was duly executed and by the Debtor, GEL and Eagle, and delivered to Archer, further encumbering the Properties. The GEL/GRL Mortgage was duly recorded in Register's Office on March 23, 2007 under CRFN 2007000152638. A copy of the GEL/GRL Mortgage is annexed hereto as **Exhibit "B"**.

11. As further security for the Debtor's obligations under the GEL/GRL Note, an Assignment of Leases and Rents to Additionally Secure $2,600,000.00 Consolidated Secured Promissory Note, dated March 8, 2007 (the "**AL&R**") was executed by the Debtor, GEL and Eagle and delivered to Archer. The AL&R was duly recorded in the Register's Office on March 23, 2007 as CRFN 2007000152639. A copy of the AL&R is annexed hereto as **Exhibit "C"**.

12. To further secure the Debtor's obligations under the GEL/GRL Note, on March 8, 2007, Eagle, George Lambrakis, Gregory Lambrakis and Emmanuel Lambrakis[8] (the "**GRL Guarantors**") duly executed and delivered a Guarantee to Archer (the "**GRL Guarantee**" and

---

8 On November 9, 2011, in support of Eagle's Opposition to Archer's Motion to Dismiss that case, Emmanuel Lambrakis filed the *Affidavit of Dr. Emmanuel Lambrakis in opposition to the Motion to dismiss* dated November 4, 2011, which indicated, *inter alia*, that he is the father of Gregory Lambrak is, George Lambrakis, and Alexander Lambrakis.

together with the GEL/GRL Note, GEL/GRL Mortgage, AL&R, and GEL Guarantee the "**Loan Documents**").  A copy of the GRL Guarantee is annexed hereto as **Exhibit "D"**.

13.    Pursuant to paragraph 2 of the GEL/GRL Note, captioned *Payments*, the Debtor promised to repay the GEL/GRL Loan by making payments of principal and interest "commencing May 1, 2007, and on the first day of each and every month thereafter, through and including April 1, 2008" (the "**Maturity Date**") calculated on the actual number of days elapsed over a 360 day year, at which time the Debtor was required to pay all of the outstanding balance of the principal, together with accrued and unpaid interest and any other amounts due and payable.  See paragraph 2 of GEL/GRL Note, annexed hereto as **Exhibit "A"**.

14.    Pursuant to paragraph 4.1 of the GEL/GRL Note and paragraph 21 of the GEL/GRL Mortgage, similarly captioned *Events of Default*, the failure to make any payment when due, including the failure to repay the debt on or before the Maturity date constitutes an Event of Default.  See paragraph 4.1 of GEL/GRL Note and paragraph 21 of the GEL/GRL Mortgage annexed hereto as **Exhibit "A"** and **Exhibit "B"** respectively.

15.    Paragraph 4.4 of GEL/GRL Note, and paragraph 22 of the GEL/GRL Mortgage further provide, among other things, that upon maturity, the outstanding principal amount of the Loan, together with all accrued interest and all other sums secured by the Loan Documents, shall be immediately due and payable, and all other sums secured by the Loan Documents, shall be immediately due and payable, and all unpaid amounts shall accrue interest at a rate equal to twenty-four (24%) interest per annum (the "**Default Rate**").  See paragraph 4.4 of GEL/GRL Note and paragraph 22 of the GEL/GRL Mortgage annexed hereto as **Exhibit "A"** and **Exhibit "B"** respectively.

16.     Paragraph 24 of GEL/GRL Mortgage further provides, among other things, that in the event of a default, Archer may commence an action to foreclose the rights of the Debtor in the GEL Property, the GRL Property, and the Eagle Property.  The GEL/GRL Mortgage further provides, among other things, that in any action to foreclose, Archer is entitled, without notice and without regard to the adequacy of the security for the debt, to the appointment of a receiver. See paragraph 24 of GEL/GRL Mortgage, annexed hereto as **Exhibit "B"**.

17.     The AL&R provides, among other things, that in the event of a default, the Debtor shall pay to Archer any rents received from the Properties.  See paragraphs 2, 4 and 6 of the AL&R, annexed hereto as **Exhibit "C"**.

**Defaults Under The Loan Documents**

18.     The Debtor failed to comply with the terms and conditions of the GEL/GRL Note and GEL/GRL Mortgage by failing to make payment of all sums due on the Maturity Date (the "**Default**").  On or about October 13, 2008, Archer's counsel transmitted a letter duly demanding the Debtor make payment of the entire unpaid balance of the Loan (the "**Notice of Default**"). However, despite such demand, the Debtor refused or otherwise failed to make full payment by the Maturity Date.  A copy of the Notice of Default is annexed hereto as **Exhibit "E"**.

**Archer Obtained Judgment In Its Favor**
**Entitling It To Foreclose On The GEL/GRL Mortgage**

19.     Pursuant to the Default and the Debtor's failure to cure same, on or about November 10, 2008, Archer commenced an action to foreclose on the GEL/GRL Mortgage (the "**Foreclosure Action**") in the Supreme Court of the State of New York, Queens County under Index No. 27397/08 against the Debtor, GRL, Eagle, the GEL Guarantors, and other defendants with an interest in the Properties (if any).

20.      On or about October 25, 2010, an Order Granting Summary Judgment and Other Relief and Appointing Referee to Compute (the "**SJ Order**"), was entered in the Foreclosure Action.  Pursuant to the SJ Order, Nizin was appointed as Referee, and accordingly prepared an Oath.  Pursuant to Nizin's Oath, a sum of $2,406,528.93 was due Archer, plus per diem interest every day thereafter.  A copy of the SJ Order is annexed hereto as **Exhibit "F"**.

21.      On or about August 5, 2011, Archer's Motion for Judgment of Foreclosure and Sale (the "**Foreclosure Order**") was granted in the Foreclosure Action, and in connection therewith, a foreclosure sale was scheduled for September 16, 2011 (the "**Original Sale Date**"). A copy of the Foreclosure Order and Notice of Entry is annexed hereto as **Exhibit "G"**.

**The Receiver**

22.      On or about August 26, 2010, Archer filed an *ex parte* motion in the Foreclosure Action for an Order appointing a Temporary Receiver to manage the Properties based upon both the express terms of the Mortgage[9] and New York Real Property Law ("**RPL**") § 254(10).[10]

23.      By Order Appointing Temporary Receiver in a Foreclosure Action, dated August 23, 2010 (the "**Receiver Order**"), Justice Augustus C. Agate appointed the Gary C. DiLeonardo, Esq. (the "**Receiver**") as temporary receiver.  A copy of the Receiver Order is annexed hereto as **Exhibit "H"**.

**The GRL Amended Petition**

---

9 Paragraph 24 of the Mortgage provides in part, "Upon the occurrence of any Event of Default, Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Mortgagor and in and to the Mortgaged Property . . . (vii) apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Mortgagor, or any Guarantor or any person, firm or other entity liable for the payment of the debt."

10 RPL § 254(10) captioned *Mortgagee entitled to appointment of receiver* provides: A covenant "that the holder of this mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver," must be construed as meaning that the mortgagee, his heirs, successors or assigns, in any action to foreclose the mortgage, shall be entitled, without notice and without regard to adequacy of any security of the debt, to the appointment of a receiver of the rents and profits of the premises covered by the mortgage; and the rents and profits in the event of any default or defaults in paying the principal, interest, taxes, water rents, assessments or premiums of insurance, are assigned to the holder of the mortgage as further security for the payment of the indebtedness."

24.     On September 16, 2011 (the "**Petition Date**"), the day of the scheduled foreclosure sale, the Debtor filed its voluntary petition (the "**Petition**") for relief under Chapter 11 of the Bankruptcy Code.   Thereafter, on November 8, 2011, the Debtor filed the GRL Amended Petition which included a completely revised set of schedules (the "GRL **Amended Petition**").   According to the Amended Petition, the Debtor possesses assets in the amount of $900,500.00, and liabilities in the amount of $50,000.00.   The GRL Amended Petition differs from the First Petition in that it indicates that the Debtor is no longer a Single Asset Real Estate entity, although nothing in the GRL Amended Petition would suggest that the Debtor is not a single asset real estate entity.   See the GRL Amended Petition at page 1 annexed hereto as **Exhibit "I"**.

25.     The GRL Amended Petition lists the value of the GRL Property as unknown. Archer is listed as the creditor holding the claim secured against the value of the GRL Property. In fact, other than the unsecured obligation owed to insider Emmanuel Lambrakis in the sum of $50,000, Archer is listed as the sole secured creditor of the Debtor's estate.   The Second Petition differs from the GEL Amended Petition in that it identifies Gregory Georgias Associates to hold an unsecured claim in the amount of $27,500, and creditor DEP, to hold an unsecured claim in an unknown amount.

26.     Besides the unsecured claims of Emmanuel Lambrakis, Gregory Georgias Associates, and DEP, the Debtor failed to list any other unsecured creditors on the List of Creditors Holding 20 Largest Unsecured Claims as contained in its Second Petition.

27.     According to the Petition, the Debtor failed to generate any income during the two (2) years prior to the Petition Date, and similarly failed to indicate that the Debtor generated any income prior to the time the Receiver was appointed.   The Petition also appears to confirm that

the Debtor has no employees.

28.     Finally, the Debtor has not filed any documents subsequent to the Petition Date (other than a proof of insurance and a cookie cutter Response to Archer's Motion to Dismiss previously submitted in exactly the same form in a different case), including any application to retain counsel, all demonstrating the Debtor's desire to delay and hinder Archer's its rights under the Foreclosure Order.

**The GRL Property**

29.     As indicated by the Affirmation of Gary C. DiLeonardo, Esq. (the "**Receiver's Affirmation**") dated March 2, 2012, and corroborated by the Lender Affidavit, Emmanuel Lambrakis is the current tenant at the GRL Property, and is the subject of a landlord tenant proceeding for the non-payment of rents to the Receiver.  As a result, Emmanuel Lambrakis continues to operate his business from the GRL Property rent free, at the expense of Archer.

30.     In addition, Archer has received notice that as of December 26, 2011, insurance on the GRL Property lapsed.  A copy of the Notice of Cancellation of Insurance (the "**Insurance Cancellation Notice**"), indicating that insurance on the GRL Property has lapsed is annexed hereto as **Exhibit "J"**.

**Property Taxes**

31.     On January 4, 2012, counsel for Archer contacted the Queens County taxing authority to learn that the Debtor currently owes the New York City Department of Finance ("**NYCDOF**") and XSpand (a third party purchaser of delinquent real estate taxes) taxes, penalties and fees in excess of $51,798.82 on the GRL Property, $17,702.57 of which was

incurred post-petition.   Copies of the outstanding property tax amounts as owed to both

NYCDOF and XSpand is annexed hereto as **Exhibit "K"**.

32.     Not surprisingly, the Debtor failed to identify or provide for treatment of

NYCDOF or XSpand's claims in the GRL Amended Petition.

## THE APPLICATION

14.     Archer requests that this honorable Court grant an Order pursuant to 11 U.S.C. §§

707(A) and 1112(b), 28 U.S.C. §§ 1391, 1408, 1409 and 1654, and Rule 9014 of the Federal

Rules of Bankruptcy Procedure dismissing this case for cause, with prejudice, and granting *in rem*

relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4), such that any and all future

filings under the Bankruptcy Code by the Debtor, non-debtor EMMANUEL LAMBRAKIS, non-

debtor   GREGORY   LAMBAKIS,   non-debtor   GEORGE   LAMBRAKIS,   non-debtor

ALEXANDER LAMBRAKIS, or any other person or entity with an interest in the real property

of the Debtor shall not operate as a stay as to Archer's enforcement of its rights in and to the real

property of the Debtor, and for such other and further relief as the Court deems just and proper.

## RESERVATION OF RIGHTS

15.     Archer expressly reserves the right to amend or supplement this Motion, to

introduce evidence supporting this Motion at the hearing on the Motion, and to file additional and

supplemental objections as Archer deems advisable.

## NOTICE

16.     Notice of this Motion has been provided to the Office of the United States

Trustee, counsel to the Debtor, and those parties entitled to notice in this chapter 11 case.   In

light of the nature of the relief requested, Archer submits that no other or further notices need be

provided.

17.     No prior application seeking the relief requested herein has been made before this Court.

**WHEREFORE**, Archer respectfully requests that this honorable Court enter an Order pursuant to 11 U.S.C. §§ 707(A) and 1112(b), 28 U.S.C. §§ 1391, 1408, 1409 and 1654, and Rule 9014 of the Federal Rules of Bankruptcy Procedure dismissing this case for cause, with prejudice, and granting *in rem* relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4), such that any and all future filings under the Bankruptcy Code by the Debtor, non-debtor EMMANUEL LAMBRAKIS, non-debtor GREGORY LAMBAKIS, non-debtor GEORGE LAMBRAKIS, non-debtor ALEXANDER LAMBRAKIS, or any other person or entity with an interest in the real property of the Debtor shall not operate as a stay as to Archer's enforcement of its rights in and to the real property of the Debtor, and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       March 2, 2012

                                        KRISS & FEUERSTEIN LLP


                                        *s/ Jerold C. Feuerstein*
                                        Jerold C. Feuerstein (JF9829)
                                        360 Lexington Avenue
                                        Suite 1200

New York, New York 10017
(212) 661-2900

*Attorneys for Archer Capital Fund, L.P.*