UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

In re:

GRL LLC,

                    Debtor.

------------------------------------------------------------------------x

**Hearing Date: To Be Determined**

**MEMORANDUM OF LAW IN SUPPORT OF ORDER DISMISSING THE DEBTOR'S CHAPTER 11 CASE FOR CAUSE AND WITH PREJUDICE**

Chapter 11

Case No. 1:12-10801-alg

Hon. Allan L. Gropper
United States Bankruptcy Judge

JEROLD C. FEUERSTEIN, ESQ.
KRISS & FEUERSTEIN, LLP
*Attorneys for Archer Capital Fund, L.P.*
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900

## BACKGROUND[1]

The relevant facts and particulars are set forth in the Affidavit of Joel R. Fogel (the "**Lender Affidavit**"), an authorized person operating on behalf of Archer Capital Fund, L.P. ("**Archer**"), and the Application in Support of Jerold C. Feuerstein, Esq. (the "**Application in Support**") as submitted herewith and as otherwise set forth herein.

## PRELIMINARY STATEMENT

The filing of the instant case is the Debtor's second bad faith, voluntary, *pro se,* filing since September 16, 2011. The First Case, properly venued before the Bankruptcy Court in the Eastern District of New York, was rightfully dismissed on January 27, 2012, pursuant to 11 U.S.C. § 1112(b), by Order and on motion of the UST, at which hearing Archer filed an application in support of the UST's Motion to Dismiss and was present at the resulting hearing.[2] Pursuant to the facts derived from the First Petition, the GRL Amended Petition and the Second Petition (lacking all schedules), neither the Debtor's address, nor the location of the Debtor's sole asset have changed. Nevertheless, the Debtor purposefully filed the instant petition before the Bankruptcy Court in the Southern District of New York, presumably to select a different forum, and more specifically to have its case assigned to a judge other than the Honorable Carla E. Craig.

Based upon the information contained in the First Petition, and the GRL Amended Petition, the Debtor's only asset is the GRL Property, and the Second Petition identifies Archer as the Debtor's only secured creditor, with Emmanuel Lambrakis, Gregory Georgias Associates, and DEP as the Debtor's only other creditors, holding an unsecured claims in relatively small or

---

1 Capitalized terms used herein but not otherwise defined shall have the same meanings given to them as set forth in the Lender Affidavit and the Application in Support (as defined herein).

2 Archer similarly filed an application seeking to dismiss the Debtor's case, which was calendared to be heard on a date subsequent to the motion of the United States Trustee. Archer's motion was rendered moot by the decision of the Honorable Carla E. Craig with respect the motion to dismiss, filed by the UST.

unknown amounts. The Debtor's sole asset, the GRL Property, was the subject of the Foreclosure Action as a result of the Debtor's Default on the debts underlying the GEL/GRL Mortgage. Consequently, the Debtor's case is nothing more than a two-party dispute between the Debtor and Archer, which can be resolved through enforcement of the Foreclosure Order. The Debtor admittedly has no cash flow, and is, and has been, unable to meet any of its current expenses. Archer has been provided with evidence to demonstrate that the Debtor has permitted insurance on the GRL Property to lapse. Finally, the Debtor has no employees, and the time of the commencement of this case clearly evidences the intent to frustrate the legitimate efforts of Archer to enforce its rights under the Foreclosure Order.

## ARGUMENT

### I.     The Debtor's Chapter 11 Case Should Be Dismissed For Cause

11 U.S.C. § 1112(b) of the Bankruptcy Code provides that the court (absent unusual circumstances) shall dismiss a chapter 11 case upon a showing of cause by a party in interest.[3] While "cause" is not specifically defined, § 1112(b)(4) of the Bankruptcy Code sets forth a non-exclusive list of sixteen examples of cause for dismissal, including a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A); *see In re Gen. Growth Props., Inc.*, 409 B.R. 43, 55 (Bankr. S.D.N.Y. 2009); *see also In re Adler*, 329 B.R. 406, 409 (Bankr. S.D.N.Y, 2005); *Quarles v. U.S. Trustee*, 194 B.R. 94, 96 (W.D. Va. 1996) ("[t]he factors in § 1112(b) [of the Bankruptcy Code] are non-exclusive, and a bankruptcy court may consider additional grounds in determining "cause"').

---

[3] "[O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested . . . dismissal is not in the best interests of the creditors and the estate, the court shall . . . dismiss a case under this chapter . . . if the movant establishes cause." 11 U.S.C. § 1112(b) (emphasis added).

3

### A. The Debtor Filed This Chapter 11 Case In Bad Faith

Filing a petition in bad faith provides the requisite "cause" under § 1112(b) of the Bankruptcy Code to dismiss a chapter 11 case. *See C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1309 (2d Cir. 1997) ("[w]hen it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the Chapter 11 petition may be frivolous"); *see also Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222 (2d Cir. 1991).

The Second Circuit applies a two-prong test to determine whether to dismiss a case: "if both objective futility of the reorganization process and subjective bad faith in filing the petition are found." *In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997). To satisfy the objective prong, "the movant must demonstrate the objective futility of the reorganization process such that at the time of filing there was no reasonable probability that [the debtor] would eventually emerge from bankruptcy proceedings." *Squires Motel, LLC v. Gance*, 426 B.R. 29, 34 (Bankr. N.D.N.Y. 2010). To establish subjective bad faith, "the movant must show that there was no reasonable likelihood that the debtor intended to reorganize." *Id*. (internal quotes omitted).

In determining whether bad faith exists, courts consider all the surrounding facts of the case, employing a "totality of the circumstances" test, rather than any single factor. *See In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997); *In re Fraternal Composite Servs., Inc.*, 315 B.R. 247, 249 (Bankr. N.D.N.Y. 2003). Although analyzing whether a chapter 11 was filed in bad faith requires a "highly factual determination," it is also "one that may sweep

4

broadly." *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, at 1312 (2d Cir. 1997).

In *In re C-TC 9th Ave. P'ship*, the court outlined the following factors to consider as particularly indicative of a bad faith filing:

> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees.

113 F.3d at 13 11; *see also Squires Motel, LLC* v. *Gance,* 426 B.R. 29, 35 (N.D.N.Y. 2010); *In re Phoenix Piccadilly, LTD.,* 849 F.2d 1393, 1394-95 (11th Cir. 1988). Consideration of these factors confirms that this case was commenced in bad faith, and should be dismissed.

As set forth above, the Debtor's one asset is the GRL Property, and the Second Petition identifies only three unsecured creditors, insider Emmanuel Lambrakis, who holds a claim in a relatively small amount in relation to Archer's claim, Gregory Georgias Associates, believed also to be an insider, and DEP. The Debtor's sole asset, the GRL Property, was the subject of the Foreclosure Action as a result of the Debtor's default on the debts underlying the GEL/GRL Mortgage. Consequently, the Debtor's case is nothing more than a two party dispute between the Debtor and Archer, which can be resolved through enforcement of the Foreclosure Order. The GRL Amended Petition identified that the Debtor failed to demonstrate any cash flow, and as a result, has and will be unable to meet current expenses.

Finally, the Debtor failed to identify that it has any employees, and the timing of the commencement of this case, once again, clearly evidences an intent to frustrate the legitimate

5

efforts of Archer to enforce its rights under the Foreclosure Order. That is because this case was again commenced shortly before a foreclosure sale, was filed *pro se* - <u>for the second time</u>, the Second Petition lacked any schedules and other pertinent information, and the Second Petition was filed before the Courts of the Southern District of New York, conceivably the Debtor's attempt to evade appearing before Judge Carla E. Craig in the Eastern District of New York.

As stated by the court in *In re HBA East, Inc.,* 87 B.R. 248 (Bankr. E.D.N.Y. 1988):

> Chapter 11 petitions filed for the purpose of frustrating the legitimate processes of a non-bankruptcy forum constitute use of the reorganization vehicle inconsistent with the congressional intent. Chapter 11 relief should not be available to entities filing to obtain a perceived advantage in litigation with others or to provide an alternative judicial forum . . .

*Id.* at 260; *see also in re 698 Flushing Realty Corp.*, 335 B.R. 17, 21 (Bankr. E.D.N.Y. 2005) ("This case is the very essence of a bad faith filing-commenced in an efforts to gain an upper hand in state court litigation, with a demonstrable absence of any possibility of confirming a chapter 11 plan"); *In re Cedar Shore Resort, Inc.*, 235 F.3d 375 (8th Cir. 2000) ("Debtors seeking the protections of the Code should act in conformity with the Code's underlying principles of equity and fairness, and any debtor who files bankruptcy in bad faith should not be permitted to enjoy the protections of Chapter 11, even though the debtor might be capable of effectuating a reorganization"); 7 Collier on Bankruptcy at 1112-68 ("[a]nother basic underpinning of the good faith doctrine is the equitable concept of 'clean hands.' As a general matter, bankruptcy relief is equitable in nature, and, as a general rule, equitable remedies are not available to any party who fails to act in an equitable fashion").

Although the GRL Amended Petition and Second Petition differ from the First Petition originally filed by the Debtor with respect to classifying the Debtor as a Single Asset Real Estate entity ("**SARE**") as defined pursuant to 11 U.S.C. § 101(51B), there are no factual differerences in

6

the GRL Amended Petition to support the Debtor not being classified as SARE. The only logical conclusion to be derived by this amendment is that the Debtor became wise to the more stringent deadlines imposed on a SARE debtor, and attempted to avoid such deadlines – evidencing yet another indicia of bad faith by the Debtor.

In addition, the improper motives of the Debtor in commencing this case are further confirmed by the fact that (other than filing proof of insurance and a copy of a sur-reply used in the related and dismissed case of In re Eagle Realty, LLC filed under Case No. 1:11-47909-cec), the Debtor has made no filings, not even an application to retain counsel, since the filing of the petition on September 16, 2011. Moreover, the Debtor failed to provide documentation necessary to be examined at the first scheduled Meeting of Creditors on October 24, 2011, requiring an adjournment, and thereafter failed to appear altogether at the second Meeting of Creditors scheduled for December 21, 2011. Finally, the Debtor failed to comply with the Court's directive in that the Debtor maintain insurance on the GRL Property, posing a risk to the estate.

More importantly, Archer has recently become aware that as of December 26, 2011, the Debtor has let the insurance on the GRL Property lapse. This is especially important in light of the extensive damage sustained by the GEL Property. Damage to the GRL Property, similar to that found in the GEL Property, would undoubtedly reduce the value of the Debtor's estate as well as the value of Archer's collateral.

The Debtor's chapter 11 case will continue to cause loss to the Debtor's estate until it is dismissed. For example, as a result of this chapter 11 filing, the Debtor is subject to all of the costs, expenses and risks associated with a bankruptcy proceeding, including statutorily imposed U.S. Trustee's fees, and any other professionals retained by any official committee of unsecured

7

creditors, should such unsecured creditors be discovered. *See* 28 U.S.C. § 1930(a)(6); 11 U.S.C. § 330.

In addition, the improper motives of the Debtor in commencing this case are further confirmed by the fact that (other than filing proof of insurance and a copy of a sur-reply used in the related and dismissed case of In re Eagle Realty, LLC filed under Case No. 1:11-47909-cec), the Debtor has made no filings, not even an application to retain counsel, since the filing of the petition on September 16, 2011 or February 28, 2012.  Moreover, the Debtor failed to provide any documentation necessary to be examined at the first scheduled Meeting of Creditors on October 24, 2011, requiring an adjournment in the First Case, and thereafter failed to appear altogether at the second Meeting of Creditors scheduled for December 21, 2011, also in the First Case.  Finally, the Debtor's re-categorization of itself as something other than Single Asset Real Estate, should be considered the Debtor's disingenuous attempt at extending the time it could enjoy protection pursuant to the automatic stay in the Bankruptcy Court.

There is no benefit to the Debtor's creditors by this filing.  Rather, as set forth above, this case was filed at the behest of the Debtor solely in an effort to prevent Archer's from foreclosing on the GEL/GRL Mortgage, and seeking to obtain an advantage in that regard.

Based in the foregoing, Archer respectfully submits that the Debtor never really intended to reorganize, and as a result, ample cause exists for the entry of an Order dismissing the Debtor's chapter 11 case as a bad faith filing, with prejudice.

### B. The Instant Filing Represents the Debtor's Attempt At Forum Selection

Pursuant to the facts derived from the First Petition, the GRL Amended Petition and the Second Petition, neither the Debtor's address, nor the location of the Debtor's sole asset have

8

changed.  Nevertheless, the Debtor purposefully filed the instant petition before the Bankruptcy Court in the Southern District of New York.

Venue is improper in this Southern District of New York pursuant to 28 U.S.C. §§ 1391, 1408 and 1409, as the Debtor's address was, and continues herein to be 171-65 Hillside Avenue, Jamaica, New York 11432.  In addition, the GRL Property, is also located in Queens County, State of New York, has an address of 3276/3278 31st Street, Astoria, New York (Block 587, Lot 68).  Accordingly, since the Debtor's address, along with its sole asset are both located in Queens County, New York, proper venue should be placed in the Eastern District of New York. *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353 (2d Cir.2005).

The Debtor's decision to file its Second Case in the Southern District of New York, instead of the re-filing before the Bankruptcy Court of the Eastern District of New York, may only be rationalized by its purposeful attempt at seeking a fresh forum, and more specifically to have its case assigned to a judge other than the Honorable Carla E. Craig.

The Debtor's downright attempt to "forum shop" should be seen as a ruse that should not be countenanced by this Court.  Accordingly, the Debtor's Second Case, filed before the Bankruptcy Court for the Southern District of New York should be dismissed with prejudice. See *In re Hall, Bayoutree Assoc*., Ltd., 939 F.2d 802 (9th Cir. Ariz. 1991)(holding that the district court did not abuse its discretion in dismissing a bankruptcy case on grounds that venue was improper and that case had been filed in bad faith, rather than transferring that case to a more appropriate court in determining whether interests of justice required that case be transferred rather than dismissed.)

## C. The Debtor Was Well Aware That It Is Prohibited From Appearing *Pro Se* As A Limited Liability Company Before This Court

The Debtor is a limited liability company that it is not represented by an attorney.  A

9

search of the New York State Department of Corporations registration database reveals GRL LLC to be an active domestic limited liability company. A copy of the results of that search is annexed hereto as **Exhibit "R**".

It is respectfully submitted that, by long standing and consistent interpretations of 28 U.S.C § 1654, artificial entities such as a limited liability company are prohibited from appearing *pro se* before the United States Bankruptcy Courts. See 28 U.S.C. § 1654.

Furthermore, sufficient case law exists to support the contention that artificial entities such as corporations and partnerships may appear in the federal courts only through licensed counsel; they cannot appear *pro se* through their shareholders or officers. See Schreibman v. Walter E. Heller & Co. of Puerto Rico (In re Las Colinas Dev. Corp.), 585 F.2d 7 (1st Cir.1978); Rowland v. California Men's Colony, 506 U.S. 194, 201, 113 S.Ct. 716, 721 (1993); Palazzo v. Gulf Oil Corp., 764 F .2d 1381, 385 (11th Cir.1985). Since the Debtor is an artificial entity, it cannot represent itself in this Chapter 11 proceeding, without the representation of licensed counsel.

Particularly concerning, is the fact that the Debtor was made aware of its inability to appear before this or any other Bankruptcy Court, *pro se,* by virtue of the fact that Archer previously opposed the Debtor's *pro se* filing in the First Case by filing its First Motion to Dismiss on September 24, 2011. As a result of Archer's First Motion to Dismiss, the Debtor appeared in Court with counsel on November 2, 2011, the return date of the First Motion to Dismiss, thereby causing Archer to voluntarily withdraw its First Motion to Dismiss.

That the Debtor has again filed a voluntary petition, *pro se*, serves only to demonstrate the Debtor's complete disregard for Archer and this Court. Accordingly, the Debtor should not be permitted to proceed *pro se*, and its case should be dismissed, with prejudice.

**D. The Debtor's Cavalier Attitude Towards the Bankruptcy Court Demonstrates It's Intent On Using The Bankruptcy Court <u>Merely to Further It's Scheme To Delay, Hinder and Defraud Archer</u>**

On February 28, 2012, the Debtor filed its Second Petition for Chapter 11 relief, which was devoid of any and all schedules, any Statement of Financial Affairs, a list of Equity Security Holders, an affidavit pursuant to LBR 1007-2, a Corporate Ownership Statement, and a Summary of Schedules among other things. In light of the foregoing, an analysis of the GRL Amended Petition may further serve to demonstrate the Debtor's failure to provide the Bankruptcy Court of the Eastern District of New York with necessary information and also the Debtor's cavalier attitude towards the Bankruptcy Court in general.

On January 4, 2012, counsel for Archer contacted the NYSDOF and learned that the Debtor currently owes NYSDOF and XSpand unpaid real estate taxes, penalties and fees from January 2010 to present, an amount in excess of $47,062.41 on the GRL Property. Not surprisingly, the GRL Amended Petition, identified neither NYSDOF nor XSpand as creditors. The Debtor's further misrepresentations, miscalculations, or lack of diligence with respect to the actual outstanding real property taxes owed can only be attributed to the Debtor's bad faith effort to further mislead creditors, Archer, and this Court.

Upon information and belief, as of the date of this Affirmation, which is no less than **<u>129 days</u>** since the Debtor filed for Chapter 11 bankruptcy relief, the Debtor has failed to provide **<u>any documentation</u>** as required by this Court and requested by the UST, failed to set a bar date, and take **<u>any action</u>** in furtherance of reorganization. Furthermore, the Debtor failed to appear at the Initial Debtor Interview with the UST, failed to retain an attorney, failed to attend the Meeting of Creditors, and failed to pay quarterly fees due the UST. See the Curtin Declaration at

paragraphs 13-20 annexed hereto as **Exhibit "O"**. Accordingly, grounds exist to grant the Motion and dismiss the Debtor's case.

Finally, as indicated by the Insurance Cancellation Notice, the Debtor failed to maintain insurance on the GRL Property. **See Exhibit "J"**.

In fact, during the First Case, the Debtor failed to take any action in furtherance of reorganization, as evidenced by its failure to appear at the Initial Debtor Interview with the UST, failed to retain an attorney, failed to attend the Meeting of Creditors, and failure to timely pay quarterly fees due the UST. See the Curtin Declaration at paragraphs 13-20 filed along with the UST Motion to Dismiss annexed hereto as **Exhibit "O"**. Accordingly, grounds exist to grant Archer's instant motion to dismiss the Debtor's Second Petition and this case.

Finally, upon information and belief, as of the date of this memorandum, the Debtor failed to provide an appropriate affidavit indicating whether any cash disbursements were made by the Debtor for the relevant period as required by the January 27, 2012 Order of the Honorable Carla E. Craig in the First Case. Accordingly, the Debtor's case, which was clearly filed in bad faith, should be dismissed with prejudice.

E. **The Filing Of the Debtor's Second Petition Constitutes A Scheme To Delay, Hinder and Defraud Archer, And The Debtor's Case Should Be Dismissed With Prejudice Pursuant to 11 U.S.C. § 362(d)(4)**

Given the nature of *in rem* relief, extending for a period of two years, it is reasonable that Congress purposely intended that these orders would be entered when a creditor can prove that the debtor's filing of the petition was part of a scheme not only to hinder and delay, but also to defraud a particular creditor. *In re Van Eck*, 425 B.R. 54 (Bankr. D. Conn. 2010).

By requiring that the scheme to hinder, delay and defraud a creditor must involve either an unauthorized transfer of the property or multiple bankruptcy filings affecting the property,

12

§ 362(d)(4) addresses conduct that could be indicative of an abusive filing in relation to a real property foreclosure. [T]he filing of multiple bankruptcy cases by a debtor or others holding an interest in the property for the purpose of delaying a foreclosure could be part of the requisite scheme. Id. at 69.

On its face, (unless there is an allegation of transfer of an interest) the required statutory "scheme" must include at least two bankruptcy filings. See 11 U.S.C. § 362(d)(4)(B); See also *Collier on Bankruptcy*, paragraph 362.05[19][a], at 362–79—362–81. Due to the detailed statutory framework for *in rem* orders set forth in § 362(d)(4), arguably Congress intended to limit a court's power to issue an *in rem* order pursuant to §§ 105(a) and 349(a) to situations where the § 362(d)(4) requirements have been satisfied. Accordingly, Archer will hereby outline the several reasons that the Debtor's conduct in the First Case and the instant case satisfies a §362(d)(4) analysis below.

Although it does not appear that the Debtor herein engaged in transfers of interests in the GRL Property under § 362(d)(4)(A), it is readily apparent that the various petitions filed by the Debtor are part of a scheme to hinder, delay and defraud Archer under § 362(d)(4)(B). *In re Blair*, No. 09–76150–ast, 2009 WL 5203738, at *4 (Bankr. E.D.N.Y. Dec.21, 2009) ("To obtain the relief requested, [the creditor] ... bears the burden of showing that the various petitions filed by the Debtors are part of a scheme to hinder, delay and defraud [the creditor] ... under § 362(d)(4)(B)."). *In re Lemma*, 394 B.R. 315, 325 (Bankr.E.D.N.Y.2008) ("[T]he Bank has the burden of establishing that the current filing is part of a scheme, that the scheme involved the transfer of real property or multiple filings, and that the object of the scheme is to hinder, delay and defraud the Bank.").

13

The Debtor has not only filed a petition with the bankruptcy court of this district, but also had a similar Chapter 11 case pending before the Court of the Eastern District, which case was ultimately dismissed by motion of the UST on January 27, 2012, approximately one month prior to the instant filing.

Next, in both circumstances, the Debtor filed its petitions on the eve of foreclosure sales, with the first filing on the day of the foreclosure sale. Additional evidence that the case was filed in bad faith, and solely to delay Archer's entitlement to foreclose may be seen in the fact that the Debtor, an artificial entity, filed its First and Second Petitions *pro se,* even after it was well aware that such a pro se filing would not be permitted before any of the Bankruptcy Courts pursuant to Archer's First Motion to Dismiss, and the Debtor obtaining counsel the day before the scheduled hearing on its First Motion to Dismiss.

Then, after filing its First Petition in the First Case, the Debtor essentially took no further action in that case. Although the Debtor appeared to have retained an attorney on the return date of Archer's First Motion to Dismiss, Debtor's counsel never made any formal application to become retained. Documentary evidence suggests that the Debtor permitted insurance on the GRL Property to lapse, and the Debtor provided no basis or explanation for amending the Single Asset Real Estate declaration as contained in the First Petition.

Morover, the Debtor failed to take any steps toward confirming a plan and never completed any scheduled or rescheduled meetings with the UST or the Meeting of Creditors in the First Case. As pointed out by the Archer in the Application in Support submitted herewith, the Debtor omitted necessary and important data, including tax obligations owed to NYCDOF, and the IRS from the GRL Amended Petition or the First Petition.

14

More troubling, is the fact that when the First Case was dismissed by Order of the Honorable Carla E. Craig, the Debtor purposefully proceeded to re-file its voluntary *pro se* petition in the Southern District of New York instead of the Eastern District of New York, undoubtedly, an attempt to select a more favorable forum – neglecting that venue would be improper, and undoubtedly to avoid having its case being reassigned to Judge Craig.

In the case at bar, the Debtor again filed its voluntary *pro se* petition containing none of the necessary schedules or information, and has again failed to demonstrate evidence that it retained an attorney.

Accordingly, the Court in this case should conclude, as did the *Van Eck* Court, that the Debtor's repeat filings demonstrate a lack any serious intention to reorganize, were performed solely to delay, hinder, and defraud Archer from conducting a foreclosure sale, and have provided a sufficient indicia of bad faith as to rightfully warrant relief pursuant to § 364(d)(4).

THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

**WHEREFORE**, Archer respectfully requests that this Court grant the Motion and enter an Order pursuant to 11 U.S.C. §§ 707(A) and 1112(b), 28 U.S.C. §§ 1391, 1408, 1409 and 1654, and Rule 9014 of the Federal Rules of Bankruptcy Procedure dismissing this case for cause, with prejudice, and granting *in rem* relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4), such that any and all future filings under the Bankruptcy Code by the Debtor, non-debtor EMMANUEL LAMBRAKIS, non-debtor GREGORY LAMBAKIS, non-debtor GEORGE LAMBRAKIS, non-debtor ALEXANDER LAMBRAKIS, or any other person or entity with an interest in the real property of the Debtor shall not operate as a stay as to Archer's enforcement of its rights in and to the real property of the Debtor, and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       March 2, 2012

                              KRISS & FEUERSTEIN LLP

                              *s/ Jerold C. Feuerstein*
                              Jerold C. Feuerstein (JF9829)
                              360 Lexington Avenue
                              Suite 1200
                              New York, New York 10017
                              (212) 661-2900

                              *Attorneys for Archer Capital Fund, L.P.*